Cordero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Los demandantes-apelantes, Rafael Ignacio Pagán Ortiz y otros (en adelante los apelantes), solicitan la revisión de una sentencia dictada por el Tribunal de Primera Instancia,' Sala Superior de Bayamón, el 17 de enero de 1996. En dicha sentencia el Tribunal de Instancia desestimó la demanda con perjuicio bajo el fundamento de que la parte demandante no se encontraba preparada para entrar en la vista. Inconforme, los apelantes recurren ante nos y citan como errores que el tribunal recurrido se equivocó al concluir que la parte demandante no se encontraba preparada el día de la vista para demostrar la responsabilidad de los demandados y al desestimar la demanda con perjuicio. A continuación un breve resumen de los hechos.
I
La demanda del presente caso fue radicada el 21 de enero de 1992. En la misma, los demandantes reclamaron sufrimientos y angustias mentales como consecuencia de la muerte de un familiar que alegadamente murió como consecuencia de las actuaciones negligentes de la Policía de Puerto Rico al intervenir con unas personas que habían secuestrado a dicho familiar.
Mediante moción del día 27 de febrero de 1992 la parte demandante solicitó la anotación de la rebeldía de la co-demandada Policía de Puerto Rico por éstos no haber hecho alegación de clase alguna respecto a las alegaciones de la demanda. Del mismo modo, el día 10 de marzo de 1992 la parte demandante solicitó la anotación de la rebeldía contra el Estado Libre Asociado por éstos no haber presentado su contestación a la demanda. El 14 de mayo de 1992 la parte demandada presentó su contestación a la demanda.
El 17 de junio de 1993 la parte demandante solicitó el señalamiento de una conferencia *1039 sobre el estado del caso con el fin de adelantar los procedimientos. El día 5 de febrero de 1993 se celebró una conferencia sobre el estado del caso en el cual la parte demandante compareció representada por el Ledo. Jaime Luciano Jiménez. El Estado Libre Asociado de Puerto Rico compareció representado por el Ledo. Luis A. Mercado. En dicha vista se señaló la conferencia con antelación al juicio para el día 14 de mayo de 1993 y la vista del caso para el día 18 de agosto del mismo año.
El 14 de mayo de 1993 se celebró la conferencia con antelación al juicio. Las partes, que comparecieron representados por sus respectivos abogados, solicitaron que la conferencia se convirtiera en una conferencia sobre el estado del caso. Según lo solicitado, la conferencia se convirtió en una conferencia sobre el estado del caso y en la misma se señaló la conferencia con antelación al juicio para el 6 de agosto de 1993 y la vista del caso para el 29 de noviembre del mismo año.
En la vista del caso señalada para el 29 de noviembre de 1993 la parte demandante solicitó un señalamiento posterior ya que los testigos no habían llegado al Tribunal. La parte demandada consintió a la suspensión. El Tribunal dejó señalada la vista del caso para el 14 de junio de 1994, cuya vista también fue suspendida.
El 8 de junio de 1994 la parte demandante solicitó un proyecto de orden para citar varios testigos, entre éstos: Edwin Fonseca, Dra. María S. Conte, Luis Germán Quiñones Caballero y Juan L. Arroyo Báez.
En la vista del caso señalada para el 17 de octubre de 1994 la parte demandante compareció representada por el Ledo. Primitivo Pagán Colón y la parte demandada compareció representada por el Ledo. Alejandro López Lorenzo. El Tribunal dejó sin efecto el señalamiento debido al fallecimiento del representante legal de la parte demandante, el Ledo. Jaime Luciano Jiménez. A esos efectos reseñaló el caso para vista en su fondo para el día 22 de marzo de 1995.
Mediante moción radicada el 2 de junio de 1995 la parte demandante solicitó la transferencia de la vista en su fondo previamente señalada para el día 5 de junio de 1995. En la misma se informó que varios testigos anunciados no habían podido ser localizados a pesar de las órdenes que se expidieron. En específico, se le informó al Tribunal que el testigo Luis Germán Quiñones Caballero se encontraba recluido en la Institución Prairie Correctional Facilities en Minnessota, Estados Unidos.
En la vista celebrada el 5 de junio de 1995 el Tribunal señaló una nueva conferencia con antelación al juicio para el 19 de septiembre de 1995. Además, el Tribunal señaló la vista en su fondo para los días 17 y 18 de enero de 1996.
El 19 de septiembre de 1995 se celebró la conferencia con antelación al juicio. Durante la vista el Tribunal estableció el término dentro del cual se debía completar el descubrimiento de la prueba y señaló una nueva conferencia con antelación al juicio para el 5 de octubre de 1995.
El día 5 de octubre de 1995 se celebró la conferencia con antelación al juicio. Durante dicha vista el Tribunal dispuso los términos y condiciones para finalizar el descubrimiento de prueba pendiente, incluyendo ciertas órdenes para obtener los récords siquiátricos, certificación de salario del occiso, el récord de la compañía aseguradora y una orden para la patóloga forense. El Tribunal concedió a las partes hasta el 27 de noviembre de 1995 para presentar el correspondiente informe enmendado y dejó el juicio señalado para los días 17 y 18 de enero de 1996. s
*1040 El 17 de enero de 1996 las partes comparecieron para el comienzo del juicio en su fondo. Minutos antes de comenzar la vista la parte demandante volvió a entrevistar al testigo Luis Germán Quiñones Caballero. En dicho momento el testigo expresó temor a que se tomaran represalias en su contra por testificar e indicó que no quería declarar.
Llamado el caso la parte demandante informó que estaba preparada para comenzar el desfile de su evidencia, pero indicó que el testigo Luis Germán Quiñones no quería testificar. La parte demandante, que se proponía comenzar su desfile de prueba con el testimonio de dicho testigo, le informó al Tribunal que necesitaba reevaluar la decisión de comenzar con este testigo dada su negativa momentánea a declarar. Por otro lado, la parte demandada argumentó que el caso había sido previamente señalado y que la parte demandante no había estado preparada por lo que debía desestimar el mismo.
El Tribunal tomó en consideración el hecho de que era la tercera ocasión en la cual se había señalado para vista en su fondo sin que la misma pudiese ser celebrada, entre otras razones, por la ausencia de los testigos demandantes, por lo que ordenó la desestimación de la demanda, con perjuicio.
Contra ese dictamen los demandantes interpusieron la siguiente apelación bajo los señalamientos de error previamente reseñados, y discutidos más adelante.
Considerados los planteamientos de las partes, los documentos sometidos y el derecho aplicable, procede que se revoque la sentencia apelada.
II
Los demandantes arguyen que el Tribunal de Instancia erró al concluir que la parte demandante no se encontraba preparada el día de la vista para demostrar la responsabilidad de los demandados por su culpa o negligencia.
Para llegar a esta determinación el Tribunal se basó en el hecho de que los demandantes no tenían en sala a los testigos Edwin Fonseca y Juan L. Arroyo Báez. Además, el Tribunal también tomó en consideración el hecho de que el testigo Luis Germán Quiñones había indicado poco minutos antes de la vista que no declararía.
Las Regla 64 de Evidencia, 32 L.P.R.A. Ap. IV, dispone en lo que resulta pertinente, lo siguiente:

"A) Definición: ‘No disponible como testigo' incluye situaciones en que el declarante:

2. Insiste en no declarar a pesar de orden del tribunal para que declare, o

3. [...]

4. [...]

5. Está ausente de la vista y el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal.

No se entenderá que un declarante no está disponible como testigo si la alegada razón de la no disponibilidad ha sido motivada por la gestión o conducta del proponente de la declaración con el propósito de evitar que el declarante comparezca o declare.

B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

*1041
1. Testimonio anterior: Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista.

2. [...]

3. Declaraciones contra interés: Una declaración que al momento de ser hecha era tan contraria al interés pecuniario o propietario del declarante o le sometía al riesgo de responsabilidad civil o criminal, o tendía de tal modo a desvirtuar una reclamación suya -contra otro, o creaba tal riesgo de convertirlo en objeto de odio,ridículo o desgracia social en la comunidad, que un hombre razonable en su situación no hubiera hecho la declaración a menos que la creyera cierta.

4. [...]

5. [...]"

La anterior regla apoya la admisibilidad de prueba de referencia en factores de necesidad y confiabilidad. Bajo esta regla las instancias en que se puede admitir prueba de referencia de cierta confiabilidad se justifican al existir la necesidad de que se haga, por razón de que el testigo no está disponible. Si se determina que el testigo no está disponible conforme a las disposiciones del inciso A(l)(5), el inciso B dispone qué tipos de circunstancias permitirían la admisión de declaraciones constitutivas de prueba de referencia.
De la prueba surge que la parte demandante podía demostrar que los testigos podían ser considerados como "testigos no disponibles” bajo la referida regla. Del mismo modo la parte demandante tenía los medios que proveen las reglas de evidencia para producir los testimonios de los testigos que no comparecieron a la vista y para obligar a testificar al testigo que se negó, y era la parte demandante quien tenía que tomar la decisión de utilizarlo bajo esas circunstancias.
En el presente caso el Tribunal de Instancia no debió concluir que la parte demandante no estaba preparada para demostrar su caso por el hecho de que dos testigos no estuviesen presentes y por un testigo negarse a testificar, luego de haber expresado los demandantes de su interés de rehacer el testimonio de los testigos a tenor con la referida regla.
Por otra parte, surge del récord que los demandantes solicitaron comenzar con otros testigos anunciados que a la misma vez eran testigos de la parte demandada. A esos efectos la • Regla 43 (C), 32 L.P.R.A. Ap. IV, expresa lo siguiente:

"(C) El juez que preside un juicio o vista tendrá control y amplia discreción sobre el modo en que la evidencia es presentada y los testigos son interrogados con miras a que la evidencia sea presentada en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando dilaciones innecesarias."

El inciso (C) de la Regla 43 antes mencionada consigna la amplia discreción y control que tiene el juez sobre la forma en que se presenta la evidencia con el fin de que la prueba desfile en la forma más efectiva posible promoviendo la solución justa, rápida y económica de la controversia con el último fin de descubrir la verdad. Bajo este inciso el juez puede variar el orden de la prueba de las partes, es decir, establecer qué testigos declaran primero y cuáles después.
*1042 Según lo antes expuesto el Tribunal de Instancia debió haber utilizado la amplia discreción y control que le confiere la Regla 43 (C) para permitir que los demandantes alteraran el orden de su prueba antes de llegar a la determinación de que los demandantes no estaban preparados para la vista en su fondo.
III
Los tribunales tienen que mantener el delicado balance entre intereses que aparentan estar en conflico. Por un lado el interés de que los asuntos se ventilen en forma rápida, justa y económica y por otro lado, el interés particular de los litigantes de que sus controversias se diluciden y se resuelvan en sus méritos. Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 497 (1982). Los tribunales, en el ejercicio de su discreción, tienen el poder para desestimar una demanda o eliminar las alegaciones de una parte. No empece a ello, este poder debe ejercitarse de forma mesurada y únicamente en casos extremos; Arce v. Club Gallístico, 105 D.P.R. 305,307 (1976), y el caso ante nos se acerca bastante, pero no totalmente, al ser un caso extremo que merece ser desestimado. La trayectoria de la jurisprudencia de los últimos años apunta la preferencia de la sanción económica como primera alternativa. La desestimación se entiende adecuada allí donde otras sanciones han probado ser inefectivas. José Cuevas Segarra, Práctica Procesal Puertorriqueña, Vol. II, Publicaciones J.T.S., 1979, pág. 205.
En Ramírez v. Srio de Hacienda, 85 D.P.R. 823, 829 (1962), el Tribunal Supremo estableció la siguiente norma:

"La desestimación de un pleito sin ir a sus méritos como un medio de sanción, debe utilizarse después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento."

No deben imponerse sanciones drásticas contra una parte cuando la conducta a censurarse es exclusivamente de parte de los abogados. Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787,792 (1974). En Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 498 (1982), el Tribunal Supremo volvió a expresarse sobre este asunto: Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas, al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida. La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades[...] las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.
En el presente caso el récord demuestra que no se le puede atribuir el estancamiento procesal solamente a la parte demandante, ya que dicha parte tuvo que realizar múltiples gestiones para agilizar los procedimientos además del problema de tener un testigo en una institución penal. Por otro lado, del récord se desprende que no todas las vistas en su fondo fueron transferidas a solicitud de la parte demandante. Tampoco surge del récord que el Tribunal de Instancia le impusiera algún tipo de sanción a los demandantes antes de desestimar la demanda con perjuicio, como tampoco se le notificó a la parte como es requerido.
El Tribunal de Primera Instancia deberá emitir una orden de señalamiento apercibiéndole *1043 LUT rABRAH~-~EDr~OR al abogado de la parte demandante a que no habrán más dilaciones y de haberlas, se desestimará la demanda. Se le deberá ordenar a los abogados de las partes a que notifiquen a sus clientes el señalamiento con copia ~de la orden que emitirá el Tribunal de~
Primera
Instancia. Iv Por todo lo antes expuesto, se revoca la sentencia recurrida y se devuelve el caso a! Tribunal de Primera Instancia, Sala Superior de Bayamón, para que continiien los procedimientos de forma consistente con b
aquI resuelto. Lo acuerda y manda el Tribunal y lo certifica la
Secretaria General. Aida Ileana
Oquendo Graulau